UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ORTIZ,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>RAFAEL ZUNIGA,<br><br>　　　　Respondent. | No. 2:14-cv-2598 KJN P<br><br><br>ORDER |

I. <u>Introduction</u>

Petitioner is a federal prisoner, proceeding without counsel. Both parties consented to proceed before the undersigned for all purposes. <u>See</u> 28 U.S.C. § 636(c). Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming that (1) his due process rights were violated during the disciplinary process for a Bureau of Prisons ("BOP") incident report alleging that petitioner attempted to introduce narcotics into a federal prison in August of 2013, and (2) subsequently, prison staff engaged in misconduct in connection with the disciplinary proceedings and his transfer to a different federal prison. Petitioner's second claim was dismissed on October 9, 2015, and respondent was directed to submit the confidential information used by the hearing officer. Respondent has now submitted the confidential information under seal.

As set forth more fully below, the court denies petitioner's due process claims.

## II. Background

In 1990, petitioner was convicted in the Southern District of New York of conspiracy to possess and intent to distribute heroin, in violation of 21 U.S.C. §§ 841 and 846. (ECF No. 16-1 at 1.) Petitioner was sentenced to 600 months imprisonment. (ECF No. 16-1 at 2.) Petitioner's current projected release date is August 1, 2033, via good conduct time. (ECF No. 16-2 at 1.)

On February 7, 2014, reporting employee R. Womeldorf, Lt., submitted an incident report alleging that petitioner attempted to introduce narcotics into FCI Allenwood on two different occasions, August 8, 2013, and August 19, 2013, based on three greeting cards addressed to petitioner in which was discovered, after testing, heroin and a scheduled 3 narcotic Suboxone concealed under panels in the cards. (ECF No. 16-4 at 1.)

On February 13, 2014, the Unit Discipline Committee ("UDC") referred the charge to the Discipline Hearing Officer ("DHO"), K. Bittenbender, for further hearing. (ECF No. 16-4 at 1-2.) Bittenbender was not a member of the UDC. (Id.)

On February 14, 2014, petitioner appeared before the DHO, and found to have committed the disciplinary charge. (ECF No. 16-5 at 1.)

## III. Analysis

### A. Standard of Review

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that his custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). A federal prisoner who challenges the validity or constitutionality of his underlying conviction must file a motion to vacate the sentence pursuant to 28 U.S.C. § 2255. Stephens v. Herrera, 464 F.3d 895, 897 (9th Cir. 2006). On the other hand, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence, as petitioner does here, must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000); see also Harrison v. Ollison, 519 F.3d 952, 956 (9th Cir. 2008).

////

////

B. Venue

Pursuant to 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus must be brought in the district court where the petitioner is confined or in the district where he was convicted and sentenced. Venue was proper in the Eastern District of California when this action was filed because petitioner was then incarcerated at FCI Herlong, which is in the Eastern District. Petitioner has since been transferred to FCI Schuylkill, which is in Pennsylvania. However, this court may continue to exercise jurisdiction over this action, notwithstanding petitioner's transfer. See Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990) ("'[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change'") (quoting Santillanes v. United States Parole Comm'n, 754 F.2d 887, 888 (10th Cir. 1985).)

C. Due Process in the Disciplinary Hearing Context

Federal prisoners have certain due process rights in disciplinary proceedings that may take away credits. See Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974). However, in prison disciplinary proceedings, an inmate is not entitled to the full panoply of due process rights that apply to traditional criminal cases. Wolff, 418 U.S. at 556. The Ninth Circuit has observed that prison disciplinary proceedings command the least amount of due process along the prosecution continuum. United States v. Segal, 549 F.2d 1293, 1296-99 (9th Cir. 1977).

In the prison disciplinary context, due process requires that the prisoner receive: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Wolff, 418 U.S. at 563-71. The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause." Wolff, 418 U.S. at 571.

The decision rendered on a disciplinary charge must be supported by "some evidence" in the record. Superintendent v. Hill, 472 U.S. 445, 455 (1985). A finding of guilt on a prison disciplinary charge cannot be "without support" or "arbitrary." Id. at 457. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56, and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)). See also Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987) (same). Determining whether this standard is satisfied in a particular case does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995). Indeed, in examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. Hill, 472 U.S. at 455. The question is whether there is any reliable evidence in the record that could support the decision reached. Toussaint, 801 F.2d at 1105.

Where a protected liberty interest exists, the requirements imposed by the Due Process Clause are "dependent upon the particular situation being examined." Hewitt v. Helms, 459 U.S. 460, 472 (1983), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). The process due is such procedural protection as may be "necessary to ensure that the decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S. 210, 228 (1990). In identifying the safeguards required in the context of disciplinary proceedings, courts must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." Hill, 472 U.S. at 454-55. The requirements of due process in the prison context involve a balancing of inmate rights and institutional security concerns, with a recognition that broad discretion must be accorded to prison officials. Wolff, 418 U.S. at 560-63.

////

////

////

IV. <u>Petitioner's Claims</u>

   A. <u>Alleged Due Process Violations (First Ground for Relief)</u>

Petitioner's first ground for relief is based on the February 7, 2014 incident report, and the subsequent disciplinary proceedings. Petitioner contends that Lt. Womeldorf falsely accused petitioner of "successfully introducing drugs into the prison." (ECF No. 1 at 3.) Two weeks later, petitioner claims that DHO Bittenbender found petitioner guilty based solely on a note from a confidential informant which made no mention of the accusation in this report and which was provided by the Lt./DHO seven months after the fact. (ECF No. 1 at 3.) Petitioner contends that the incident report "spawned two separate FBI investigations," both of which found no wrongdoing by petitioner. (ECF No. 1 at 6.)

Petitioner contends that petitioner was informed by Warden Rackenwald that petitioner was going to be transferred to a low level security prison because petitioner's prison points were low. But two weeks later, the warden went on Christmas vacation for a month, and upon return, was surprised to see petitioner still locked up in the S.H.U. The warden told Lt. Womeldorf, in petitioner's presence, to finish up his paperwork so that the warden could sign off on the transfer. Lt. Womeldorf said it would be finished by the end of that week. (ECF No. 1 at 8.) Lt. Womeldorf then went on vacation with his "life-long friend and co-worker DHO Bittenbender," and while he was gone, the warden transferred to work at another prison. (<u>Id</u>.) Petitioner states that upon his return, Lt. Womeldorf told petitioner that since Womeldorf was the backup DHO, he and Bittenbender often talked about cases and that DHO Bittenbender assured Womeldorf that if he wrote an incident report in petitioner's case, the DHO would "honor it," and that was what Womeldorf decided to do. (<u>Id</u>.) Petitioner claimed that Womeldorf said he knew petitioner had nothing to do with the mail which had been intercepted, that he believed they were intended for petitioner, and that he was going to ship petitioner to a high security institution. (ECF No. 1 at 8.)

Petitioner states that when he pointed out the FBI report, Womeldorf responded that "this was not a criminal matter so the FBI report would not be relied upon." (<u>Id</u>.) When petitioner pointed out that his points were low, Womeldorf "stated that was about to change," which petitioner asserts "would have been impossible even with an incident report" because he "only

had seven points." (Id.)

Petitioner contends he has never seen the cards used to find him guilty, and claims that the FBI performed a handwriting analysis of all of petitioner's contacts yet found no matches to the handwriting on the cards, and that despite the incident report's reference to a "review of previously submitted BOP visiting forms," petitioner never had a visit while housed at FCI Allenwood. (ECF No. 1 at 9.)

Petitioner argues that he was denied the ability to submit documentary evidence in support of his defense. (ECF No. 1 at 8.) He contends that he had documentary evidence that would disprove the theories of Lt. Womelsdorf connecting petitioner to the mailed cards. (ECF No. 21 at 4.) Petitioner contends that the evidence against him was insufficient because it was based on mail sent by persons with no connection to him. Petitioner also appears to argue that the CI's testimony was unreliable because a statement that petitioner had, at some unspecified time, been seen with unidentified drugs, is insufficient to demonstrate a connection between petitioner and the cards sent in his name. Petitioner also claims that the CI's note made no mention of the accusations in the incident report, and that the CI's note was stale, obtained seven months "after the fact." (ECF No. 1 at 3.)

Petitioner also argues that the hearing officer was not fair and impartial. (ECF No. 1 at 8; 21 at 4.) Petitioner appears to contend that Bittenbender was biased against petitioner based on Bittenbender's friendship with Lt. Womeldorf. Petitioner also contends that at the hearing, the DHO informed petitioner and his staff representative Hill that the DHO had been given a drop note by Lt. Womeldorf, who said it was from a reliable C.I., that the note stated that the C.I. had seen petitioner in the past with drugs, and "that was all the evidence he needed to find [petitioner] guilty, and [the DHO] did just that." (ECF No. 1 at 8.)

      i. Timely Written Advance Notice & Assistance

It is undisputed that on February 7, 2014, petitioner was hand-delivered the written incident report at least 24 hours prior to the February 13, 2014 initial hearing by the UDC. (ECF No. 16-4.) Petitioner was provided an opportunity to be heard at the February 13, 2014 initial hearing before the UDC, and at the February 20, 2014 disciplinary hearing before the DHO.

6

(ECF Nos. 16-4, 16-5.) Petitioner was provided staff assistance by Staff Representative J. Hill, who reviewed the evidence available to the DHO, including the confidential information, and attended the February 20, 2014 hearing with petitioner. (ECF No. 16-5 at 1.) These undisputed facts meet the first, second, third and fifth elements of Wolff.

To the extent that petitioner also complains that his due process rights were violated because the process was delayed inasmuch as charges were not brought until seven months after the incident, such claim is unavailing because it is outside the scope of this court's review. See Hill, 472 U.S. at 455; Wolff, 418 U.S. at 556. An argument that prison staff failed to issue an incident report in a timely manner is not cognizable in this federal habeas corpus proceeding. See Rivera v. Illinois, 556 U.S. 148, 158 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting Engle v. Isaac, 456 U.S. 107, 121 n.21 (1982), and Estelle v. McGuire, 502 U.S. 62, 67, 72-73 (1991)); Brewster v. Dretke, 587 F.3d 764, 768 (5th Cir. 2009) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met") (citations omitted)). Here, petitioner received the incident report at least 24 hours prior to his disciplinary hearing. Accordingly, constitutional minima were met.

    ii. Some Evidence

The record reflects that there was "some evidence" supporting petitioner's disciplinary conviction based on the three greeting cards addressed to petitioner which contained illegal substances, and the confidential statements of the CI's.

A prison disciplinary tribunal's determination derived from a statement of an unidentified inmate informant satisfies due process when the record contains 1) some factual information from which the trier can reasonably conclude that the information was reliable, and 2) a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name. Zimmerlee, 831 F.2d at 186-87. Reliability may be established by: (1) the oath of the investigating officer appearing at the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and

1  considered them reliable based on the informant's past record, or (4) an *in camera* review of the
2  documentation from which credibility may be assessed.  See Zimmerlee, 831 F.2d at 186-87.
3  Review of the reliability determination should be deferential.  Id.  Due process does not require
4  that a prisoner in a disciplinary proceeding be allowed to confront confidential informants.
5  Wolff, 418 U.S. at 568.

6  The court has reviewed the confidential information *in camera* and confirmed that several
7  CI's were used, and that contrary to petitioner's allegations, two of the CI's were interviewed in a
8  timely manner, less than thirty days after the underlying incident.  (ECF No. 24 (sealed).)
9  Moreover, not all of the CI's were interviewed by Lt. Womeldorf.  (Id.)  The DHO, having
10 benefit of the confidential information, determined that the confidential information was reliable
11 because several of the CI's were used in other cases which proved to be reliable in all cases, and
12 the statements of the CIs were "confirmed and supported through evidentiary findings and the
13 methodology of the substance being introduced."  (ECF No. 16-5 at 1.)  The confidential
14 information supports such findings; therefore, reliability of the confidential information has been
15 established because there were multiple confidential sources and a history of reliability.  See, e.g.,
16 Dorrough v. Ruff, 552 Fed. App'x 728, 730 (9th Cir. 2014) (confidential informants' statements
17 met "some indicia of reliability" where they incriminated themselves at the time of providing the
18 information, or where part of the information had already proven true, or where the informant had
19 previously supplied reliable information); Gauthier v. Dexter, 573 F.Supp.2d 1282, 1291 (C.D.
20 Cal. 2008) (Information from a confidential informant may constitute some evidence where the
21 confidentiality is necessary and there is some examination of the indicia of the reliability of the
22 evidence, such as multiple confidential sources of the information, incrimination by a source, or a
23 history of reliability).

24 In addition, the DHO relied on Lt. Womeldorf's statements concerning the three greeting
25 cards and the testing of the illegal substances.  The DHO stated that he

26 > believed the information provided by the staff member involved in
27 > this case, as they derived no known benefit by providing false
> information. The DHO finds the charge to be supported in this case
28 > based upon the greater weight of evidence cited in this report. The
> DHO finds the charge for code 111A to be supported in this case

>based upon the greater weight of evidence cited in this report as well as the reliability of confidential information received to support the inculpatory evidence relied upon.

(ECF No. 16-5 at 2.)

Therefore, the record reflects some factual information from which the undersigned reasonably concludes that the information was reliable.

In addition, respondent provided a prison official's affirmative statement that safety considerations prevent the disclosure of the names of the CI's. (ECF No. 24-1 (sealed).) Specifically, the official avers that the confidential information contains highly sensitive information about the CI's, which would present a threat to the security of the individuals, as well as the operations of the correctional institution. Id.

Petitioner's arguments concerning the FBI are unavailing. The FBI's decision not to prosecute petitioner does not affirmatively establish petitioner's innocence of the charges. (ECF No. 16-6 at 1 ("The record does not contain an FBI report, and this matter was not prosecuted.")) "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Hill, 472 U.S. at 456.

Petitioner's arguments concerning what is contained in the CI's statements are speculative and unavailing because petitioner has not been given access to such information. As noted above, due process does not require that plaintiff be allowed to confront confidential informants. Wolff, 418 U.S. at 568.

Therefore, after an *in camera* review of the confidential information and the record, the undersigned finds that "some evidence" supports the conclusion reached by the DHO, based on the three greeting cards addressed to petitioner which contained illegal substances, and the confidential statements of the CI's.

### iii. Right to Call Witnesses and Present Documentary Evidence

Petitioner does not contend that he was denied witnesses, and the reports reflect that petitioner did not ask for witnesses. (ECF Nos. 16-4, 16-5.) Rather, petitioner alleges that he was denied the ability to present documentary evidence. Respondent contends that petitioner signed the form indicating he did not wish to request any witnesses or evidence, citing the incident and

1  the disciplinary hearing reports. (ECF No. 15 at 8.) In reply, petitioner states that he did not
2  waive his right to present documentary evidence, and did not sign forms waiving his right. (ECF
3  No. 21 at 3.) Petitioner also contends his staff representative Hill was told by DHO Bittenbender
4  that no documentary evidence could be presented. (Id.)

5  The Supreme Court has held that a prisoner's right to call witnesses and present evidence
6  at a disciplinary hearing is not unlimited. See Wolff, 418 U.S. at 566-67. As the Supreme Court
7  explained, "[p]rison officials must have the necessary discretion to keep the hearing within
8  reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine
9  authority, as well as to limit access to other inmates to collect statements or to compile other
10 documentary evidence." Id. at 566 ("It may be that an individual threatened with serious
11 sanctions would normally be entitled to present witnesses and relevant documentary evidence; but
12 here we must balance the inmate's interest in avoiding loss of good time against the needs of the
13 prison, and some amount of flexibility and accommodation is required."); see also Baxter, 425
14 U.S. at 321-22. "The reasons for denying such a request to present witnesses or documentary
15 evidence may be made by prison officials either at the hearing or at a later time." Zimmerlee, 831
16 F.2d at 187 (citing Ponte v. Real, 471 U.S. 491, 497 (1985)); see also Wolff, 418 U.S. at 566
17 (noting that it would be useful for the prison officials to state their reasons for refusing to call a
18 witness, "whether it be for irrelevance, lack of necessity, or the hazards presented in individual
19 cases").

20 Here, contrary to respondent's argument, the incident report and the disciplinary hearing
21 report do not bear petitioner's signature, and neither report indicates that petitioner did not wish
22 to present evidence. The incident report notes that petitioner requested no witnesses, but does not
23 address documentary evidence. (ECF No. 16-4.) The DHO's report states that "no documentary
24 evidence was provided for consideration." (ECF No. 16-5 at 1.) Petitioner contends that his staff
25 representative Hill was informed prior to the commencement of the hearing that no documentary
26 evidence would be allowed, and petitioner claims he did not waive his right to produce such
27 evidence. (ECF No. 21 at 3.) However, the reports do not reflect that petitioner attempted to
28 introduce documentary evidence at either hearing. Both reports reflect that petitioner made

1  statements on his own behalf, but petitioner did not object that he was unable to submit

2  documents.  Moreover, plaintiff's staff representative Hill "noted no discrepancies in the

3  discipline process," and confirmed he met with petitioner before the hearing.  (ECF No. 16-5 at

4  1.)  Hill did not state that petitioner had documentary evidence he wished to present, or that the

5  DHO refused to permit petitioner to do so.  (Id.)  Thus, there is no evidence in the record to

6  support petitioner's claim that he was prevented from introducing documentary evidence.

7       But even assuming arguendo that petitioner was denied the right to submit such

8  documentary evidence, he has failed to demonstrate that such failure resulted in prejudice.

9  Petitioner is entitled to habeas relief on this due process claim only if the alleged error "had

10 substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

11 Abrahamson, 507 U.S. 619, 637-38 (1993).  See Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (a

12 federal court must assess the prejudicial impact of an error under the Brecht standard in all habeas

13 cases).  The erroneous denial of the right to present evidence at a disciplinary hearing is subject to

14 harmless error review.  Knight v. Evans, 2008 WL 4104279, at *14  (N.D. Cal. Sept. 4, 2008)

15 (citing Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006) (joining the Second, Fourth, and

16 Seventh Circuits applying harmless error review to disciplinary proceedings in federal prisons).

17      Here, petitioner cannot establish prejudice because he failed to append the documentary

18 evidence to his petition or to his reply; thus, the court is unable to evaluate its probative value.  In

19 his reply, petitioner stated:

20
> Womeldorf proposed to this petitioner three people he believed could have mailed the drugs, one he based on handwriting he found in petitioner's legal papers, which he claimed matched that of the cards containing drugs.  The handwriting turned out to be that of U.S. District Court Judge Paul A. Crotty Southern District of New York.  This petitioner had documentary evidence to disprove that theory, as well as a claim made by Lt. Womeldorf that it could have been a friend of petitioner's named Ivan Monserate because of a phone conversation, in which petitioner requested that Mr. Monserate send him pictures, which Monserate did, via a phone app which mails pictures you take with your phone to anyone you want directly from the company, not the owner of the phone, the pictures arrived three days later from the company, petitioner had the envelope and pictures mailed from a website.
>
> This petitioner had other documentary evidence all disproving theories put forth by Lt. Womeldorf.

11

(ECF No. 21 at 4.) Petitioner did not identify or provide such "other" documentary evidence.

Moreover, even if petitioner could refute that it was not the first or second proposed sources who allegedly mailed petitioner the three cards containing illegal substances, such evidence would not rebut the information provided by the CI's or the mailing of three cards, addressed to petitioner and containing illegal substances. Thus, the court cannot find that the failure to allow him to present such documentary evidence had a substantial and injurious effect or influence on the DHO's decision. Petitioner's unsupported allegations that he is innocent of the charges fail to establish that the evidence supporting his conviction was insufficient. See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") Further, such documentary evidence concerning alleged comparisons of handwriting samples would not discount the fact that "some" evidence supports the conclusion of the DHO, which is all that the Constitution requires.

    iv.  Impartial Hearing Officer

Petitioner appears to claim that DHO Bittenbender was biased against petitioner because of his lifelong friendship with Womeldorf, and that they "often talked about cases." (ECF No. 1 at 3.) As set forth above, petitioner also claims that remarks made by the DHO demonstrate that the DHO was not a fair and impartial arbitrator. (ECF No. 21 at 4.)

Respondent contends that because the DHO was not involved in the incident or the investigation, and was not a member of the UDC, the DHO was impartial, relying on Wolff and 28 C.F.R. § 541.16(b).[1] (ECF No. 15 at 8.) Respondent did not address the alleged personal relationship between Womeldorf and the DHO. Respondent could not address petitioner's new allegation concerning the remarks made to Hill prior to the commencement of the hearing because petitioner did not include such claim in his petition.

////

---

[1] "The Code of Federal Regulations provides that '[i]n order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident, or play any significant part in having the charge(s) referred to the DHO.' 28 C.F.R. § 541.16(b) (2010)." Oliver v. Babcock, 2014 WL 29666, at *6 (E.D. Cal. Jan. 3, 2014).

Inmates are entitled to an impartial decision maker in a disciplinary proceeding. Wolff, 418 U.S. at 570-71; White v. Indiana Parole Board, 266 F.3d 759, 767 (7th Cir. 2001) ("Wolff holds that prisoners are entitled to impartial decisionmakers," citations omitted.). Fairness requires an absence of actual bias and of the probability of unfairness. In re Murchison, 349 U.S. 133, 136 (1955). Bias may be actual, or it may consist of the appearance of partiality in the absence of actual bias. Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995). In order to prevail on a claim of judicial bias, a petitioner must overcome a "strong presumption that a judge is not biased or prejudiced." Sivak v. Hardison, 658 F.3d 898, 924 (9th Cir. 2011) (quoting Rhoades v. Henry, 598 F.3d 511, 519 (9th Cir. 2010)).

Preliminarily, petitioner arguably waived his contention concerning a biased tribunal because he failed to register an objection or otherwise raise the issue of bias at the disciplinary hearing. See Vermillion v. Hartley, 2012 WL 4673822 (E.D. Cal. Oct. 3, 2012) (despite failure to raise issue before the Board of Parole Hearings, issue considered in light of state court's merits review).

In any event, petitioner presented no competent evidence that DHO Bittenbender was biased against petitioner, that the DHO acted in an arbitrary manner, or that his decision was not impartial. Petitioner failed to substantiate his claim that the DHO's decision was influenced by his alleged friendship with Womeldorf. Petitioner was not present during the alleged conversation between Womeldorf and Bittenbender. Petitioner's claim that Womeldorf and Bittenbender "often talked about cases," (ECF No. 1 at 8), is insufficient to overcome the presumption of impartiality. A prisoner alleging bias must overcome the "presumption of honesty and integrity on the part of decision makers." Burgess v. Rios, 2015 WL 3402933, at *6 (E.D. Cal. 2015).

Here, petitioner produced no competent evidence demonstrating that the DHO had personal knowledge of material facts related to petitioner's involvement in the incident at issue here, or that the DHO was personally interested in the outcome of the disciplinary proceeding. Moreover, the record confirms that DHO Bittenbender was not involved with the incident or the investigation of the incident. Rather, Womeldorf's report was submitted to the UDC, and,

following the initial hearing, the UDC recommended that further disciplinary action be taken. Bittenbender was not a member of the UDC. (ECF Nos. 16-4, 16-5.) Thus, the DHO had no role in having the charge referred for disciplinary proceedings.

Petitioner also claims that at the hearing, the DHO reported that he had been given a "drop note by Lt. Womeldorf, who said that it was from [a] reliable C.I. and that the note stated that the C.I. had seen [petitioner] in the past with drugs, and that was all the evidence he needed to find [petitioner] guilty, and he did just that."[2] (ECF No. 1 at 8.) The Supreme Court has explained that "[j]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky v. United States, 510 U.S. 540, 555 (1994) (upholding the denial of a recusal motion, which has a lower threshold than a due process violation for bias). The court finds the DHO's statement made during the hearing do not reflect bias or partiality.

After review of the record, the undersigned finds that petitioner provided no competent evidence that the DHO had, or even appeared to have, any prior involvement or improper connection with petitioner's case. See 28 C.F.R. § 541.8(b) ("The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident."); Clutchette v. Procunier, 497 F.2d 809, 820 (9th Cir. 1974), mod. 510 F.2d 613, rev'd. on other grounds, Baxter v. Palmigiano, 425 U.S. 308 (1976); see also Wolff, 418 U.S. at 592-93 (Marshall, J., concurring). Petitioner has not shown a sufficient basis for rebuttal of the presumption of fairness.

For the foregoing reasons, petitioner is not entitled to relief on his due process claims.

B. New Claim

In his reply, petitioner also argues, for the first time, that the sanctions imposed included a monetary fine, and contends that the court should grant his petition on such basis, citing Apprendi

---

[2] In his reply, petitioner now claims that before the hearing commenced, the DHO made very similar remarks to staff representative Hill. (ECF No. 21 at 3.) However, petitioner does not allege that he overheard such comments and did not submit a declaration by Hill confirming that such statements were made prior to the hearing. Accordingly, such new allegation is not supported by competent evidence.

v. New Jersey, 120 S. Ct. 2348 (2000), because the issue was not contemplated in 1974 when Wolff was decided. (ECF No. 21 at 4.) Petitioner provides no additional facts or evidence in support of such claim.

It is improper to include a new issue in a traverse or reply because it deprives the opposing party of an opportunity to respond. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). Subsequently, however, the Ninth Circuit Court of Appeals found that district courts have discretion to consider claims raised for the first time in a traverse:

> a district court "has discretion, but is not required," to consider evidence and claims raised for the first time in the objection to a magistrate judge's report. United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000); see also Brown v. Roe, 279 F.3d 742, 745 (9th Cir. 2002). The district court must, however, "actually exercise its discretion" and not merely accept or deny the new claims. Howell, 231 F.3d at 622.

Breverman v. Terhune, 153 F. App'x 413, 414 (9th Cir. 2005).

Because petitioner raised his claim concerning the monetary fine for the first time in his reply, the undersigned declines to address such new claim.

V. Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's first claim is denied; and

2. The Clerk of the Court shall terminate this action.

Dated: October 13, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/orti2598.157.2241